UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DINA NICOLE D'ANTUONO; RAMONA P. CRUZ; KAREN VILNIT, : : : : | |
| Plaintiffs, : : | |
| v. : | No. 3:11cv33 (MRK) |
| : | |
| SERVICE ROAD CORP.; COUSIN VINNIE'S BACK ROOM, INC., : : : | |
| Defendants. : | |

## RULING AND ORDER

Pending before the Court is Plaintiff's Motion to Certify Order for Interlocutory Appeal [doc. # 58] pursuant to 28 U.S.C. § 1292(b). Plaintiffs Dina Nicole D'Antuono, Ramona P. Cruz, and Karen Vilnit seek permission to appeal from the Court's recent Memorandum of Decision [doc. # 55] ordering Ms. D'Antuono and Ms. Vilnit, but not Ms. Cruz, to proceed to arbitration. This Court is typically reluctant to certify orders for interlocutory review pursuant to Section 1292(b). *See, e.g.*, *Sullivan v. Stein*, No. 3:03cv1203 (MRK), 2005 WL 977069, at *1 (D. Conn. Apr. 19, 2005). However, under rare circumstances, this Court has in the past agreed to permit a party to seek the Second Circuit's permission to appeal from an interlocutory order. *See, e.g.*, *Doninger v. Niefhoff*, No. 3:07cv1129 (MRK), 2009 WL 1364890, at *2 (D. Conn. May 14, 2009). The Court believes that the order currently at issue presents such circumstances, and therefore GRANTS Plaintiff's Motion to Certify Order for Interlocutory Appeal [doc. # 58].

Section 1292(b) provides, in pertinent part, as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference

>of opinion and that an immediate appeal form the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b). If the district court makes such a certification and if timely application is made to the Court of Appeals, that court may, in its discretion, permit an immediate appeal to be taken. *Id.* Certification under § 1292(b) should be granted sparingly because it undermines the policy against piecemeal appeals. *See Lora v. O'Heaney*, 602 F.3d 106, 112 (2d Cir. 2010); *Doninger*, 2009 WL 1364890, at *2. To certify an order for interlocutory appeal, the order must satisfy three criteria: (1) it must involve a "controlling question of law"; (2) "as to which there is substantial ground for difference of opinion"; and (3) "an immediate appeal may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see, e.g.*, *Casey v. Long Island Railroad Co.*, 406 F.3d 142, 146 (2d Cir. 2005). While the Court has some lingering doubts about the wisdom of allowing an appeal at this time, the Court nonetheless concludes that all three criteria are satisfied regarding the Court's order requiring Ms. D'Antuono and Ms. Vilnit, but not Ms. Cruz, to proceed to arbitration.

First, the Court is persuaded that the order currently at issue involves several different controlling questions of law. This Court based its decision on the Second Circuit's decision in *In re American Express Merchants' Litigation* ("*American Express II*"), 634 F.3d 187 (2d Cir. 2011), the Second Circuit's decision in *Ragone v. Atlantic Video at Manhattan Center*, 595 F.3d 115 (2d Cir. 2010), and on other Second Circuit cases involving the federal common law of arbitrability. But the nature of the arbitration agreement at issue in the case – which combines several different potentially problematic features that the Second Circuit has previously had occasion to consider in isolation, but never all together – means that the controlling and purely legal question of whether that arbitration agreement is enforceable based on existing Second Circuit precedent is a novel one. In addition, as the Court discussed at length in its Memorandum

of Decision, after the United States Supreme Court's recent decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), there is now a great deal of uncertainty surrounding the continuing validity of the federal common law of arbitrability doctrines on which Plaintiffs rely. *See, e.g.*, *id.* at 1747 (noting with disapproval that "judicial hostility toward arbitration" has "manifested itself in 'a great variety' of 'devices and formulas' declaring arbitration against public policy" (citation omitted)). The continuing validity of those doctrines, and of *American Express II*, 634 F.3d 187, and *Ragone*, 595 F.3d 115, are also controlling questions of law.

Second, the Court is also persuaded that there is substantial ground for difference of opinion regarding those several controlling issues of law. The Second Circuit has never had occasion to consider how a district court should analyze an arbitration agreement presenting a combination of the particular features present in the arbitration agreements at issue in *American Express II*, 634 F.3d 187, and in *Ragone*, 595 F.3d 115. When an arbitration agreement includes a class waiver provision in addition to a cost- and fee-shifting provision and a provision altering the otherwise applicable statute of limitations, a party's willingness to waive some – but not all – of the potentially offending features may not be sufficient to save the arbitration agreement. As the Court tried to emphasize in its Memorandum of Decision, the enforceability of arbitration agreements is a highly contentious and – currently – constantly evolving area of law. In light of that fact, the Court has no doubt at all that reasonable jurists might well disagree with this Court's analysis of the controlling legal issues in its Memorandum of Decision and its ultimate legal conclusions regarding the enforceability of the arbitration agreement at issue in this case.

Third, the Court is also persuaded that permitting an interlocutory appeal from the order in question may well materially advance this litigation. The Court has found this third prong to be the most difficult one in past cases, *see Doninger*, 2009 WL 1364890, at *3, and this case is

no different. Permitting an appeal now will of course delay the arbitration. But the Court's ordering required two of the three named Plaintiffs to arbitrate their claims against Defendants, and thus split this case into two different tracks – one track in federal court, and the other in arbitration – presenting virtually identical issues. There is some possibility, albeit a remote one, that the Second Circuit may ultimately resolve this case in a manner that places all three Plaintiffs back onto the same track. Because a ruling from the Second Circuit may ensure that there is only one proceeding in one forum, rather than two proceedings in two different fora, the Court concludes that an interlocutory appeal could materially advance this litigation. *See id.*

Accordingly, the Court GRANTS Plaintiff's Motion to Certify Order for Interlocutory Appeal [doc. # 58], and will separately file an amended version of its earlier Memorandum of Decision [doc. # 55] in order to certify the following questions to the Second Circuit:

(1) Are *American Express II* and *Ragone* still good law, in light of the United States Supreme Court's most recent interpretation of 9 U.S.C. § 2 in *AT&T Mobility*? *See* 131 S. Ct. at 1746 (reasoning that 9 U.S.C. § 2 does not authorize federal courts to invalidate arbitration agreements based on "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue").

(2) Under the federal common law of arbitrability, as set forth in *American Express II* and *Ragone*, and in light of the United States Supreme Court's most recent interpretation of 9 U.S.C. § 2 in *AT&T Mobility*, are district courts permitted to inquire into general public policy concerns in determining whether a particular arbitration agreement is enforceable, or must they instead only look to the economic feasibility of arbitration under the circumstances?

(3) Under *American Express II* and *Ragone*, and in light of the United States Supreme Court's most recent interpretation of 9 U.S.C. § 2 in *AT&T Mobility*, is an arbitration agreement that contains a class action waiver provision, a cost- and fee- waiver provision, and a provision requiring all arbitration claims to be filed within six months after the termination of the contractual relationship enforceable when the party seeking to enforce the agreement waives enforcement of the cost- and fee-waiver provision and the six-month filing provision, but not the class action waiver provision?

The Court understands that by certifying these three questions, the Court's entire order is certified, not just the three questions presented above. *See United States v. Stanley*, 483 U.S. 669, 676-77 (1987) (explaining that 28 U.S.C. § 1292(b) "brings the 'order,' not the question, before the [appellate] court"); *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 391-92 (2d Cir. 2008) ("When a district court certifies, pursuant to 28 U.S .C. § 1292(b), a question of controlling law, the entire order is certified and we may assume jurisdiction over the entire order, not merely over the question as framed by the district court."). Plaintiffs must file their Petition for Permission to Appeal with the Clerk of the Second Circuit within ten days of the filing of this Court's forthcoming amended memorandum of decision. *See* 28 U.S.C. § 1292(b); Fed. R. App. P. 5(b). If a timely application is made to the Second Circuit, the Second Circuit may in its discretion permit an interlocutory appeal to be taken. *See Doninger*, 2009 WL 1364890, at *1.

                                                IT IS SO ORDERED.

                          /s/        Mark R. Kravitz
                                      United States District Judge

**Dated at New Haven, Connecticut: June 7, 2011.**