# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DINA NICOLE D'ANTUONO,  :
RAMONA P. CRUZ, and KAREN  :
VILNIT,  :
  :
    Plaintiffs,  :
  :
v.  :    No. 3:11cv33 (MRK)
  :
C&G OF GROTON, INC., RCG of  :
GROTON, INC., and PAUL GENNA,  :
  :
    Defendants.  :

## MEMORANDUM OF DECISION

Pending before the Court is Plaintiff Ramona Cruz's Motion to Conditionally Certify Class and Issue Notice [doc. # 90]. Because there is a low bar for conditional certification under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and because Ms. Cruz has satisfied its minimal requirements, the Court GRANTS the Motion.

## I.

Under the FLSA, a plaintiff may bring an action either on an individual or collective basis for herself and "other employees similarly situated." 29 U.S.C. § 216(b). Similarly situated individuals may not be a party to a collective action under the FLSA unless they affirmatively opt into the case. *Id.* To provide those individuals with an opportunity to opt in, "district courts have the discretionary power to authorize the sending of notice to potential class members." *Hendricks v. J.P. Morgan Chase Bank, N.A.*, 263 F.R.D. 78, 82 (D. Conn. 2009) (quotation marks and citations omitted). The FLSA's "broad remedial intent favor[s] early notice to

1

potential plaintiffs." *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 263 (S.D.N.Y. 1997).

Collective actions under the FLSA are not subject to Rule 23 requirements. *See Meyers v. Hertz Corp.*, 624 F.3d 537, 556 (2d Cir. 2010) (finding the issues raised in a motion for conditional certification "quite distinct from the question whether the plaintiffs have satisfied the much higher threshold of demonstrating that common questions of law and fact will 'predominate' for Rule 23 purposes"). While the Second Circuit has not articulated a test for FLSA certification of collective action, *see, e.g.*, *Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 179 (D. Conn. 2010), "[d]istrict courts in this circuit have undertaken a two-stage inquiry." *Perkins v. S. New Eng. Tel. Co.*, 669 F. Supp. 2d 212, 217 (D. Conn. 2009).

The first step "is for the court to determine whether the proposed class members are similarly situated"—if so, "then the collective action will be conditionally certified." *Id.* The *Perkins*'s court use of the term "similarly situated" is somewhat misleading, as the plaintiff need not show definitively that other potential opt-in plaintiffs are *actually* similarly situated: "[C]onditional certification depends not on whether the potential collective action members are in fact 'similarly situated,' but on whether [the plaintiff] has made 'a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law.'"[1] *Aros*, 269 F.R.D. at 180 (quoting *Neary v. Metro. Prop. & Cas. Ins. Co.*, 517 F. Supp. 2d 606, 618 (D. Conn. 2007)) (third alteration in original).

"A collective action should be certified if, on balance, the differences among the plaintiffs do not outweigh the similarities in the practices to which they claim to have been subjected." *Hendricks*, 263 F.R.D. at 83 (quotation marks omitted). "Courts alternatively

---

[1] In other language: "Conditional certification requires a lax showing of 'similarly situated.' During this first-tier inquiry, we ask only whether the plaintiff and the proposed representative class members alleged suffered from the same scheme." *Neary*, 517 F. Supp. 2d at 620 (quotation marks and alteration omitted).

describe this burden as 'very low' or 'minimal.'" *In re Penthouse Executive Club Compensation Litig.*, No. 10 Civ. 1145 (NRB), 2010 WL 4340255, at *2 (S.D.N.Y. Oct. 27, 2010) (citing cases). "[A]t the conditional certification stage, 'the court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations.'" *Aros*, 269 F.R.D. at 180 (quoting *Lynch v. United Services Auto. Ass'n*, 491 F. Supp. 2d 357, 368-69 (S.D.N.Y. 2007)).

The second step occurs after discovery, at which point the court—usually after the defendant has filed a motion to decertify the class—"will examine all the evidence then in the record to determine whether there is a sufficient basis to conclude that the proposed class members are similarly situated." *Perkins*, 669 F. Supp. 2d at 217. In limited situations, after extensive discovery, a court will bypass the first stage of the certification process and move directly to the second stage. *See Aros*, 269 F.R.D. at 179. However, case law does not require that "just because discovery is underway a FLSA collective action plaintiff should be held to a higher standard." *Neary*, 517 F. Supp. 2d at 619.

The Court could not locate, and the parties did not identify, any case law in this Circuit regarding the effect of a district court's prior finding that an arbitration contract was enforceable on a subsequent motion to conditionally certify a class. As more fully described below, however, there are numerous federal cases where district courts elected to conditionally certify a class before ruling on the enforceability of such contracts. *See, e.g.*, *Whittington v. Taco Bell of America, Inc.*, No. 10-cv-01884-KMT-MEH, 2011 WL 1772401 (D. Col. May 10, 2011); *Ali v. Sugarland Petroleum*, No. 4:09-cv-0170, 2009 WL 5173508 (S.D. Tex. Dec. 22, 2009); *Davis v. Novastar Mortg., Inc.*, 408 F. Supp. 2d 811 (W.D. Mo. 2005); *Villatoro v. Kim Son Restaurant, L.P.*, 286 F. Supp. 2d 807 (S.D. Tex. 2003). In these cases, the courts were willing to authorize

notice before considering whether opt-in plaintiffs would be subject to a valid arbitration agreement.

## II.

The Court has previously discussed the facts of this case, *see D'Antuono v. Service Road Corp.*, 789 F. Supp. 2d 308 (D. Conn. 2011), but will briefly review the case's recent procedural history. Other facts are discussed as relevant in the analysis.

Ms. Cruz, along with Dina Nicole D'Antuono and Karen Vilnit, are exotic dancers.[2] They allegedly performed at "Gold Club Groton"—a combination of the Gold Club, a bar featuring topless female dancers, and the Gold Club Connection, a nightclub featuring fully nude female dancers. Gold Club Hartford is a similar entity at another location. While they were employed at Gold Club Groton, Ms. Cruz, Ms. D'Antuono, and Ms. Vilnit were classified as independent contractors; they allege that they were actually employees.

Ms. D'Antuono and Ms. Vilnit each signed an "Entertainment Lease" ("Lease") requiring arbitration, which this Court subsequently found enforceable after the Defendants agreed to waive certain provisions. *See D'Antuono*, 789 F. Supp. 2d 308. Ms. Cruz never signed a Lease. The Court recently ordered the clerk to administratively close the case with regard to Ms. D'Antuono's and Ms. Vilnit's claims, as they are stayed pending arbitration. *See* Or. [doc. # 114].

In granting in part and denying in part Ms. Cruz's motion to amend the complaint, *see* Or. [doc. # 115], the Court concluded that Ms. Cruz had adequately alleged that that she had worked as an employee at Gold Club Groton; that Gold Club Groton's associated corporations C&G of Groton, Inc. ("C&G") and RCG of Groton, Inc. ("RCG") were Ms. Cruz's employers for FLSA

---

[2] As the term "exotic dancers" is used to describe the plaintiffs' profession in the Complaint, the Court uses that term throughout this Memorandum of Decision. *See* Compl. [doc. # 1] ¶ 1.

purposes; and that Paul Genna, the alleged owner and operator of C&G and RCG, was Ms. Cruz's joint employer. The Court also found that Ms. Cruz's complaint failed to adequately allege that Gold Club Groton and Gold Club Hartford are not autonomous.

As a result of these recent revisions, this suit is currently being brought by Ms. Cruz against C&G, RCG, and Mr. Genna (collectively "Defendants").

## III.

Discovery on the question of Ms. Cruz's employment has not concluded, and so the Court decides this case under the first of the two-step analysis for FLSA class certification. *See Neary*, 517 F. Supp. 2d at 618-19. The Court must therefore address two questions: should the proposed class be conditionally certified, and if so, should the Court issue notice?

## A.

The Court finds that Ms. Cruz has overcome the minimal burden necessary to conditionally certify a class. By alleging that all exotic dancers at Gold Club Groton were mislabeled as independent contractors, and by supporting her pleadings with affidavits and deposition testimony, Ms. Cruz has made "a modest factual showing sufficient to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law." *Neary*, 517 F. Supp. 2d at 618 (quotation marks omitted). As in *Neary*, "[t]he evidence submitted by plaintiff constitutes a preliminary showing that all putative class members held the same or similar positions, had the same or similar duties, and were all designated, as a class, as exempt from the . . . provisions of the FLSA." *Id.* at 622.

The Defendants raise many issues which are irrelevant at this first stage of the analysis. Whether Ms. Cruz actually worked at Gold Club Groton is an issue of fact which should not be

decided when evaluating a motion for conditional certification. *See Aros*, 269 F.R.D. at 180. It suffices for the moment that Ms. Cruz has adequately alleged that she did work at Gold Club Groton. Similarly, all questions regarding Ms. Cruz's capability to serve as a class representative and the claim that she is a "professional plaintiff" constitute thinly-disguised attacks on her credibility, which are inappropriate to address at this juncture. *See id.*; *see also Davis*, 408 F. Supp. 2d at 817 ("[J]ust because plaintiff Dodson is a plaintiff in another wage and hour case and represented by the same counsel as in this matter does not mean that plaintiffs' claims in this lawsuit do not have merit."). Lastly, Defendants' arguments regarding whether Ms. Cruz was technically an employee and whether the money she received from patrons were tips address the merits of the case, which the Court need not reach. *See Aros*, 269 F.R.D. at 180.

The harder question is the effect of the Court's previous ruling on Ms. D'Antuono's and Ms. Vilnit's Leases, given that many of the potential opt-in plaintiffs have likely signed similar agreements. The Defendants make much of the Court's previous observation that "the collective and class action waiver provision of the Lease is valid and enforceable. Thus, there are no missing 'class members,' and other exotic dancers who signed the Lease do not have any right to 'opt into' this case." *D'Antuono*, 789 F. Supp. 2d at 341 (citations omitted). However, the Court did not find that *all* leases signed by all exotic dancers are valid and enforceable; rather, after conducting a detailed analysis of the relevant facts specific to Ms. D'Antuono and Ms. Vilnit, the Court concluded that *their* Leases were valid and enforceable. As a result, the class action waiver in their Leases is enforceable, and no exotic dancers have a right to "opt-into" Ms. D'Antuono's or Ms. Vilnit's case. This, however, does not require the Court to now find that exotic dancers with leases the Court has not evaluated may not opt-into Ms. Cruz's case. Ultimately, the Court finds that its earlier ruling is not relevant in deciding this Motion.

Furthermore, although there is no case directly on point, the Court finds that the existence of other exotic dancers' arbitration agreements is also immaterial to the question of class certification. While this case is unusual insofar as the Court has already determined that Ms. D'Antuono's and Ms. Vilnit's arbitration agreements are valid and enforceable, *see D'Antuono*, 789 F. Supp. 2d 308, that determination cannot automatically be applied to the arbitration agreements of all other exotic dancers who have not had a chance to contest, on their individual facts, the applicability of their agreements. In addition, Defendants state that all current exotic dancers have signed a new arbitration agreement, which this Court has never analyzed and therefore cannot deem enforceable. *See Taco Bell*, 2011 WL 1772401, at *6 (finding that a declaratory judgment regarding the enforceability of arbitration agreements not before the court would constitute an advisory opinion at the conditional class certification stage).

That the applicability of the arbitration agreements will need to be determined individually should not prevent class certification. Admittedly, motions for class certification will fail at the first stage of the two-step inquiry when the facts and circumstances of the potential plaintiffs' work experiences differ. *See Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003). Here, however, the potential class members are all alleged to have held similar positions—the only individualized questions are whether each dancer signed an arbitration agreement and whether that agreement is enforceable. As Ms. Cruz points out, many courts have found that the existence of arbitration agreements is irrelevant to class certification, because it raises a merits-based determination, even though the courts must understand that the enforceability of those agreements will eventually need to be determined on an individual basis. *See, e.g.*, *Taco Bell*, 2011 WL 1772401; *Ali*, 2009 WL 5173508; *Davis*, 408 F. Supp. 2d 811; *Villatoro*, 286 F. Supp. 2d 807.

Finally, Defendants' reliance on *Delano v. MasTec, Inc.*, No. 8:10-CV-320-T-27MAP, 2011 WL 2173864 (M.D. Fla. Jun. 2, 2011), is misplaced. In accordance with Eleventh Circuit precedent, the *Delano* court found that the plaintiff had to demonstrate that other potential plaintiffs would be willing to opt in to support a motion for conditional certification and notice. In examining affidavits from potential plaintiffs, the court concluded summarily that some individuals who wished to opt-in would be precluded from doing so because their claims were subject to mandatory arbitration agreements and they were therefore not similarly situated to the plaintiff, who was not bound by such an agreement. *See id.* at *5. Not only is this case is not precedential, it is unpersuasive.

First, the Second Circuit does not require a would-be representative to demonstrate that other potential plaintiffs exist at the conditional certification stage. *See, e.g.*, *Neary*, 517 F. Supp. 2d at 622-23 ("As to defendant's claim that plaintiff has not identified other potential class members who would want to participate in this action, such identification, at this preliminary stage, is not required in the Second Circuit. Indeed, identification of potential class members is part of the purpose of authorizing and notice.").

Second, the *Delano* court found that the potential plaintiffs were not actually similarly situated to the would-be class representative because they had signed an arbitration agreement. But, as other district courts in this Circuit have noted, the strict "similarly situated" standard is not relevant at this stage. *See Aros*, 269 F.R.D. at 180 ("[C]onditional certification depends not on whether the potential collective action members are in fact 'similarly situated,' but on whether [the plaintiff] has made 'a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" (quoting *Neary*, 517 F. Supp. 2d at 618) (third alteration in original)). Courts in this Circuit need

8

only reach the question of whether opt-in plaintiffs in a conditionally certified class are actually similarly situated at the second stage of the two-step inquiry—which occurs after discovery is complete. *See Perkins*, 669 F. Supp. 3d at 217.

The Court finds that Ms. Cruz has alleged sufficient facts to conditionally certify a class. If they so wish, Defendants may file a motion for decertification at a later date.

## B.

Once a court decides that class certification is appropriate, it is within its sound discretion to issue and monitor notice. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989). As noted in another case, granting certification and issuing notice will have "the advantage of informing the original parties and the court of the number and identify of persons desiring to participate in this suit. With that information, analysis may be performed on the viability of the class and its representatives." *Villatoro*, 286 F. Supp. 2d at 810.

All exotic dancers who worked at Gold Club Groton, including those who have signed Leases, should be issued notice. This case already includes plaintiffs who did and did not sign Leases, and so there is no need at this stage to limit potential class members based on whether they signed a LeaseIf anyone who signed a Lease wishes to opt-in, the Court will then determine whether his or her contract is enforceable. If so, the individual will be able to proceed with arbitration; if not, the individual will be able to opt-in to Ms. Cruz's suit.

The Court must next decide whether the class should include all exotic dancers who were allegedly employed by Mr. Genna—all exotic dancers at Gold Club Groton and Gold Club Hartford—or just those exotic dancers who performed at Gold Club Groton, where Ms. Cruz allegedly was employed. Favoring the first option, Ms. Cruz relies on *Arnold v. Cargill Inc.*, No. 01-2086 (DWF/AJB), 2006 WL 1716221 (D. Minn. Jun. 20, 2006), which states that

courts have certified classes including employees of more than one location or division of a company where it has been found: (1) that a single policy prevails in several or all of defendant's subdivisions; (2) that the subdivisions are not autonomous; or (3) where there are specific allegations pertaining to more than one location.

*Id.* at *11. However, Ms. Cruz's reliance is not well founded for two reasons. First, the *Arnold* analysis is based on a Rule 23 standard—which is not applicable here. Second, Ms. Cruz has not alleged sufficient facts to support her claim that the Groton and Hartford Gold Club locations are "subdivisions," "not autonomous," or offered specific allegations from exotic dancers who have performed at Gold Club Hartford. Accordingly, notice will issue only to those exotic dancers who performed at Gold Club Groton. As the Court noted in an earlier order, should additional individuals who worked at Gold Club Hartford move to intervene, the Court will allow them to do so. *See* Or. [doc. # 115].

As Ms. Cruz alleges that Defendants' violations of the FLSA were willful, it is appropriate to issue notice to all exotic dancers who worked at Gold Club Groton within the past three years. If the Court later finds that Defendants' violations were not willful, those outside of the statute of limitations may be removed at that time. Not issuing notice until willfulness is proved would subvert the purpose of notice, as those with potentially actionable claims would likely not learn about them until the three-year statute of limitations expired.

Furthermore, the Court exercises its discretion to require that the notice be posted in the potential plaintiffs' workspace. "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011). As Ms. Cruz points out, the Gold Club's record keeping may be haphazard, *see* Mot. to Conditionally Certify Class and Issue Notice [doc. # 90-3] Ex. C (Genna Dep.) at 45, 85, 87, 88-

91, and public posting would ensure that at least all present exotic dancers are notified of the suit.

## IV.

For the above reasons, the Court GRANTS Ms. Cruz's Motion to Conditionally Certify Class and Issue Notice [doc. # 90]. The Court makes the following findings and orders:

1.  The Court conditionally certifies a class of all exotic dancers who have performed at Gold Club Groton within the past three years.

2.  The Defendants will provide the Court the names, stage names, dates of service, and last-known mailing addresses for all potential members of the class on or before December 22, 2011.

3.  Ms. Cruz has submitted a draft notice. The parties should discuss the draft notice and submit a joint revised notice, which both parties agree is fair, on or before December 22, 2011. The notice should discuss the fact that Ms. D'Antuono and Ms. Vilnit are pursuing their claims in arbitration because they signed the Lease and that Ms. Cruz is pursuing her claim in federal court because she never signed the Lease. The notice should also provide information allowing potential class members to contact the Court if they are interested in pursuing their claims.

4.  If the parties are unable to agree on the provisions of the notice by the given deadline, the disagreements and reasons for each party's respective preferences should be specified in separate status reports filed on or before December 22, 2011.

5.  Once a draft of the notice is finalized, Defendants will mail the notice to all potential class members and will provide the Court with proof of the mailing. At the end of the notice and opt-in period, Ms. Cruz may move the Court for a hearing to review the responses.

6.  Once a draft of the notice is finalized, Defendants will post the notice in a prominent location in Gold Club Groton, either in the dressing rooms or in another area used primarily by the exotic dancers, for the duration of the notice and opt-in period. Once the notice is posted, it may not be moved, although it should be replaced if it is defaced or otherwise becomes unreadable. Defendants will provide copies of photographs of the posted notice to the Court and Ms. Cruz within four days of the beginning of the notice and opt-in period.

IT IS SO ORDERED.

/s/     Mark R. Kravitz
        United States District Judge

Dated at New Haven, Connecticut: **November 23, 2011.**